FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| MICHELLE CHABOT,<br>MARIE CHABOT, and<br>DONALD CHABOT,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BERKSHIRE SCHOOL, INC.,<br>and GRANT BAGNARDI,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.: _____

**06-30177-MAP**

FILING FEE PAID:
RECEIPT # 306385
AMOUNT $ 350.00
BY DPTY CLK _____
DATE 10/16/06

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

This action arises out of inappropriate sexual conduct by Defendant Berkshire School's forty-six year old former Assistant Dean of Students, Grant Bagnardi ("Defendant Bagnardi"), towards a former sixteen year old female high school student, Plaintiff Michelle Chabot ("Michelle"). This inappropriate sexual conduct was caused by (among other things) Defendant Berkshire School's negligent hiring, training, retention, supervision, and investigation of their employees/agents, including Defendant Bagnardi. Defendant Berkshire School and Defendant Bagnardi, *inter alia*, breached fiduciary duties owed to Plaintiffs as well as its contract with the Plaintiffs, committed common law assault, invasion of privacy, fraud, misrepresentation and deceit and engaged negligence and in unfair and deceptive acts and practices in violation of MASS. GEN. LAWS ch. 93A, §§ 2, 9 and 11. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have suffered significant damage including, without limitation, severe emotional distress.

## PARTIES

1.      Plaintiff Michelle Chabot ("Michelle") is an individual and resident of Waterboro, County of York, State of Maine and at all times relevant was a person of minority age, having been born on May 15, 1986.

2.      Plaintiff Marie Chabot (hereinafter "Marie") is an individual and resident of Waterboro, County of York, State of Maine.  Marie Chabot is the natural mother of Michelle, wife of Plaintiff Donald Chabot, and at all times relevant was a legal guardian of Michelle.

3.      Plaintiff Donald Chabot (hereinafter "Donald"), is an individual and resident of Waterboro, County of York, State of Maine.  Donald Chabot is the natural father of Michelle, husband of Marie, and at all times relevant was a legal guardian of Michelle.  Michelle, Marie and Donald are collectively referred to herein as ("Plaintiffs").

4.      Upon information and belief, Defendant The Berkshire School, Inc. (hereinafter "Defendant Berkshire School"), is a duly organized and existing corporation, having its principal place of business at Sheffield, County of Berkshire, Commonwealth of Massachusetts.

5.      Defendant Grant Bagnardi ("Defendant Bagnardi"), is an individual who, based on information and belief, currently resides in the State of New York. At all relevant times was an employee, faculty member, administrator and authorized agent of Defendant Berkshire School and a person of majority age more than twenty years senior of Michelle.  Hereinafter, all Defendants are collectively referred to as "Defendants".

## JURISDICTION

6.      The amount in controversy well exceeds the jurisdiction limit.

7.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

2

## VENUE

8.      Venue is proper in this District by virtue of 28 U.S.C. § 1391 (2) & (3) as this is the judicial district in which all or a substantial part of the events or omissions giving rise to the claims occurred and in which one or more of the Defendants is subject to personal jurisdiction at the time this action was commenced.

## FACTS COMMON TO ALL COUNTS

9.      Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 8 with the same force and effect as it fully set forth verbatim herein.

10.     Prior to her admission to Defendant Berkshire School, Michelle was achieving good grades in public school, was participating in extracurricular activities, and intended to attend college.

11.     Wanting to provide Michelle with optimum college opportunities, Donald and Marie considered enrolling Michelle in a college preparatory school. In furtherance of this aspiration, Plaintiffs sought to learn about the opportunity to attend Defendant Berkshire School.

12.     Michelle always lived at home under the direct care and guidance of Donald and Marie; therefore, Plaintiffs were concerned for Michelle's safety and well-being at a boarding school.

13.     Plaintiffs were impressed by the numerous explicit representations made by Defendant Berkshire School (both prior to admission and after being admitted) including (but not limited to):

      a.      the Mission Statement, Core Values, Honor Code, school policies, motto, rules against intimate sexual contact, hazing, harassing, and abusive conduct, internet policies and guidelines, and Dormitory Guidelines;

b.     that there were strict policies and rules providing for locks on all dormitory doors, a prohibition on visits in dorm rooms by members of the opposite sex including faculty, strict lights-out and visiting hours, and a prohibition on students leaving campus;

c.     that Defendant Berkshire School is a college preparatory boarding school;

d.     that in or about Summer 2002, Defendant Berkshire School's Trustees had an interim "head" of the school and Defendant Berkshire School would continue on with their commitment of its Mission Statement, Core Values, and motto;

e.     that in or about Summer 2002, the prior "head" of Defendant Berkshire School resigned for "personal health reasons";

f.     that Defendant Berkshire School was committed to delivering the finest educational experience possible;

g.     that Michelle would be assigned an advisor who would serve as a key person in Michelle's support network and would act "as advocate, surrogate parent and friend" and who is "charged with developing a supportive relationship with each advisee and maintaining frequent, informal and formal contact with parents";

h.     that Michelle was to look to "all faculty members as potential mentors";

i.     that Defendant Berkshire School ensured the safety of their students and strict compliance to the rules contained herein by having "Dorm Parents" who performed various tasks including, but not limited to, bed checks each night;

j.     that Defendant Berkshire School was creating a new Student Life Office and Defendant Bagnardi would be one of the members of such Office and the Office members were committed to serving the needs of community members and Defendant Berkshire School such as (but not limited to) responding to the educational and emotional needs of community members; and,

i.     that Defendant Berkshire School adhered to the enforcement of strict compliance with those representations indicated herein and other such representations that may be proved at trial.

4

14.     At no time did Defendant Berkshire School disclose to Plaintiffs that Defendant Berkshire School or Defendant Bagnardi had a history involving sexual complaints and/or sexual relationships involving girls or young women.

15.     Based upon information and belief, Defendant Berkshire School had a prior history with incidents of sexual exploitation and harassment on its campus having dealt with multiple complaints in its history including, but not limited to, over a recent two year period from staff and female students against a former headmaster.

16.     Based upon information and belief, during the 2003-2004 school year Berkshire School was subject to a two-year monitoring period to make sure that "strong policies and comprehensive" education and training programs were put into effect to prevent recurring abuse. Plaintiffs were direct and/or intended beneficiaries of that two-year monitoring contract.

17.     Prior to September 2003, Plaintiffs completed the application process. Michelle was offered admission to Defendant Berkshire School for the 2003-2004 school-year. Plaintiffs, based on the representations expressly made by Defendant Berkshire School, accepted the offer by signing and returning the contract along with all required paperwork and payment of tuition and fees.

18.     At all times relevant herein, Defendants owed Plaintiffs any one or more of the following duties:

        a.     protection from infliction of mental and/or physical harm;

        b.     to properly train, supervise and control their employees, agents, and volunteers;

        c.     to investigate and report the sexual misconduct of its employees, agents, and volunteers;

        d.     to truthfully disclose the sexual misconduct of its employees, agents, and volunteers;

e.      to refrain from misrepresenting and/or concealing the misconduct of its employees, agents, and volunteers;

f.      to protect its students from lewd and lascivious acts to be performed upon them;

g.      to refrain from concealing the sexual misconduct, immorality and the lewd and lascivious acts performed (past and present) by its employees, agents, and volunteers;

h.      to conduct meaningful performance evaluations of its employees, agents, and volunteers;

i.      to thoroughly discover and investigate all incidents of sexual misconduct by its employees, agents, and volunteers;

j.      to thoroughly investigate all applicants, potential employees, agents, and volunteers;

k.      to properly investigate employees, agents, and volunteers before hiring and/or associating;

l.      to properly supervise students;

m.      to procure truthful and accurate job references regarding its employees, agents, and volunteers who would be supervising or working with minors;

n.      to take such actions as a reasonable and prudent person would have taken in the same or similar circumstances;

o.      to comply with the faith, confidence, and trust given to them by Plaintiffs and other similarly situated parents in taking care of Michelle and other minor children; and,

p.      non-delegable duties to provide for the care and safety of all students, including Michelle.

19.    As a result of Michelle's admission to Defendant Berkshire School, Defendant Berkshire School expressly undertook a parenting role for Plaintiffs/Michelle. Additionally, Plaintiffs reposed (with reasonable justification) faith, confidence, and trust in Defendant

Berkshire School's judgment, advice, and care of Michelle while attending Defendant Berkshire School.

20.     During the fall semester of 2003, Michelle sought assistance from the resources made available to students attending Defendant Berkshire School so that she could adjust to the transition associated with a new environment.

21.     Defendant Bagnardi began providing counseling and assistance for Michelle as he was one of the employees/agents of Defendant Berkshire School that provided these types of services.

22.     Defendant Bagnardi, upon meeting and working with Michelle, did the following:

   a.     presented himself to Michelle as a community member having a true understanding of the challenges Michelle faced in her adjustment to a new school;

   b.     presented himself as a caring and understanding counselor who offered support and counseling services to Michelle during Michelle's adjustment to Defendant Berkshire School;

   c.     made efforts to "groom" Michelle by fostering trust, trust that was explicitly represented to Donald and Marie by Defendant Berkshire School in Defendant Berkshire School's "parenting project";

   d.     fostered intentions towards Michelle which were neither professional nor benevolent; and,

   e.     openly breached multiple rules without consequence or even inquiry by Defendant Berkshire School regarding his behavior toward Michelle.

23.     In or about November/December 2003, Defendant Bagnardi entered Michelle's dorm room alone, closing the door behind him. Although Michelle was uncomfortable with Defendant Bagnardi's visit; however, based on Defendant Bagnardi's position of authority and the numerous representations made by Defendant Berkshire School, Michelle assumed it was permissible.

24. Defendant Bagnardi "groomed" Michelle for inappropriate sexual contact by, among other things, doing the following:

   a.   communicating with Michelle via a Defendant Berkshire School instant messenger program;

   b.   e-mailing Michelle using his personal and Defendant Berkshire School's e-mail accounts and/or a variety of other e-mail accounts;

   c.   making Michelle become dependent upon his attention by providing special attention and professing caring;

   d.   using e-mail communications with Michelle for long durations of time that often times went well after 10:00 p.m. and into the early hours of the morning;

   e.   making inappropriate, graphic, and sexually charged remarks to Michelle; and,

   f.   describing his life as one of danger and involvement with drugs, drug dealers and gun violence;

25. In or about February 2004, the following events transpired:

   a.   Defendant Bagnardi received permission from an authorized agent of Defendant Berkshire School, Michelle's dorm parent, to take Michelle off campus at 11:00 p.m.;

   b.   nobody from Defendant Berkshire School inquired as to why or where Defendant Bagnardi was taking Michelle;

   c.   Defendant Bagnardi drove Michelle around the Commonwealth of Massachusetts from 11:00 p.m. until 1:30 a.m. the next morning;

   d.   upon their return to Defendant Berkshire School, Michelle was able to reenter into her dorm through an unlocked door; and,

   e.   upon information and belief, no bed checks accounted for Michelle's whereabouts during this time period;

26. Due to Defendant Berkshire School's lax supervision of its students and employees/agents, Defendant Bagnardi pursued Michelle sexually boldly.   He frequently removed her from school premises for hours at a time, driving all over the Commonwealth of

Massachusetts and into the State of New York, holding her hand and putting his hands on her knees and thighs.

27.     During the aforementioned time period, Defendant Bagnardi isolated and removed Michelle from her peer group convincing Michelle he was the only one who could care for her, understand her, and protect her. Defendant Bagnardi repeatedly had Michelle meet with him alone without consequence or inquiry behind closed doors in his office, which was located next door to offices of Defendant Berkshire School's Dean and the Director of Student Life.

28.     Upon information and belief, Defendant Bagnardi continued visiting Michelle's dorm room without registering with the Dorm Parent, even though on numerous occasions the residential Dorm Head for Defendant Berkshire School witnessed Defendant Bagnardi in Michelle's room without questioning these acts or investigating further. None of Defendant Berkshire School's employees/agents took steps to protect Michelle or to inquire or investigate the situation despite the warning signs and suspicions that Defendant Bagnardi's conduct with Michelle was inappropriate.

29.     Although Michelle worked in the library of Defendant Berkshire School, upon information and belief, Defendant Bagnardi sent an e-mail to Michelle's supervisors in the library that he was reassigning Michelle to work directly underneath him. None of Defendant Berkshire School's employees/agents questioned this reassignment or investigated this matter.

30.     Upon information and belief, numerous students were aware and personally witnessed Defendant Bagnardi entering Michelle's dorm room and locking the door as he entered.

31.     While Defendant Bagnardi continued "grooming" Michelle, Michelle's sleep habits were negatively affected, her grades dropped, and she began missing extracurricular

9

activities. None of these warning signs were addressed or investigated by employees/agents of

Defendant Berkshire School.

32.    In or about March 2004, the following events transpired:

    a.    Defendant Bagnardi drove Michelle to Newport, Rhode Island for a weekend;

    b.    Defendant Bagnardi took Michelle to a motel in Newport, Rhode Island while he was in physical possession of a gun;

    c.    Defendant Bagnardi, while at the hotel with Michelle, caused Michelle to get into a hot tub where he provided her with an excessive amount of champagne as a means to successfully intoxicate and coerce Michelle into performing oral sex on him; and,

    d.    Defendant Bagnardi exploited Michelle by having intimate sexual intercourse with her.

33.    Defendant Bagnardi's "grooming" efforts resulted in Michelle becoming

emotionally dependent upon his attention, resulting in increased pressure for Michelle to have

sex with him.

34.    In or about Easter Weekend 2004, the following events transpired:

    a.    Defendant Bagnardi made attempts to persuade Michelle to spend the holiday weekend with him and not Michelle's family;

    b.    Michelle became increasingly anxious about spending the weekend with Defendant Bagnardi and stopped eating approximately two weeks prior to Easter weekend;

    c.    Michelle spent Easter weekend at Defendant Bagnardi's home in Massachusetts where he sexually exploited/abused her, including several acts of intimate sexual intercourse;

    d.    Defendant Bagnardi held a gun to Michelle's head; and,

    e.    Michelle returned to school dehydrated, with a vaginal or urinary tract infection.

35.    In or about April 2004, Defendant Bagnardi sexually exploited/abused Michelle at a school activity called "Mountain Day" after securing time alone with Michelle.

36.    In or about May 2004, students made complaints to Defendant Berkshire School about Defendant Bagnardi constant presence with Michelle.  Unable to ignore the situation any longer, Defendant Berkshire School finally took steps to stop Defendant Bagnardi's emotional abuse and sexual exploitation of Michelle.

37.    Despite its acute awareness and representations of alleged strong policies, comprehensive training programs, prior history, as well as the responsibilities associated with being a board school, Defendant Berkshire School, among other things:

   a.    negligently hired, trained, supervised and retained, all employees, and negligently investigated Defendant Bagnardi;

   b.    negligently supervised Michelle;

   c.    breached duties owed to Plaintiffs;

   d.    failed to provide Michelle with a safe environment free from emotional and sexual exploitation and abuse, and permitted Bagnardi to violate rules purportedly in place to protect students generally, and Michelle particularly, and turned a blind eye;

   e.    failed to exercise due care;

   f.    made false representations which it knew, or should have known, that parents, generally, and Plaintiffs particularly, would reasonably rely upon to their detriment; and,

   g.    other actions and/or omissions that may be proved at trial.

38.    Defendant Berkshire School, through its employees and agents, had actual and/or constructive knowledge of the above aforementioned events.

39.    As a direct and proximate result of Defendants' actions, Michelle withdrew from Defendant Berkshire School prior to graduating, emotionally broken and suicidal, and was

11

hospitalized. Donald and Marie personally witnessed Michelle's emotional damages and threats of suicide.

40. As a direct and proximate result of Defendants' action, all Plaintiffs have suffered, and continue to suffer damages.

## COUNT I: GROSS NEGLIGENCE AND NEGLIGENCE
### (All Defendants)

41. Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 40 with the same force and effect as if fully set forth verbatim herein.

42. Defendants owed Plaintiffs a duty of due care and a duty to act in Michelle's best interests.

43. Defendant Berkshire School and Defendant Bagnardi owed duties to Plaintiffs because of the existence of a "special relationship", a contractual obligation, their status as a boarding school, the fact that there were residential services provided by Defendant Berkshire School, and the fact that Defendant Berkshire School had custody for Michelle.

44. Defendants breached their duties to Plaintiffs, and were grossly negligent or negligent, in one or more of the following particulars:

   a.   in failing to properly train and supervise all employees, including Defendant Bagnardi;

   b.   in failing to enforce the Mission Statement, Core Values, Honor Code, school policies, motto, rules against intimate sexual contact, hazing, harassing, and abusive conduct, internet policies and guidelines, and Dormitory Guidelines;

   c.   in failing to detect and/or respond to the inappropriate nature of Defendant Bagnardi's contact with Michelle;

   d.   in allowing Defendant Bagnardi to have continued interaction with Michelle;

e.    in allowing Defendant Bagnardi to have unsupervised access to Michelle at inappropriate hours and times;

f.    in failing to properly and/or reasonably screen and investigate Bagnardi;

g.    in adopting and maintaining a practice, custom or policy of reckless indifference to incidents known or suspected sexual abuse and/or inappropriate sexual conduct of minors by its employees, agents, and/or volunteers;

h.    in failing to take any actions at any time to protect minors, and Michelle in particular, from Defendant Bagnardi;

i.    in failing to supervise Michelle;

j.    despite the foreseeable risk of harm, by acting with complete and aggravated indifference and in reckless disregard of Michelle's best interests;

k.    in failing to enforce rules, regulations, policies, and other practices to prevent inappropriate sexual conduct by their agents, employees, and/or volunteers even though they had a recent history of such problems;

l.    in concealing and failing to warn Plaintiffs about past sexual exploitation at the school; and,

m.    such other acts as may be proved at trial.

45.    Additionally, Defendant Bagnardi was grossly negligent or negligent in one or more of the following particulars, among others:

a.    failing to disclose to Plaintiffs the nature of his sexual desires and proclivity;

b.    failing to disclose to Plaintiffs his history or inappropriate sexual conduct;

c.    in committing lewd acts against Michelle;

d.    in acting as Michelle's counselor;

e.    failing to look out for the best interests of Michelle;

f.    in failing to seek and receive treatment for his obsession;

g.      in situating himself close in proximity to minors, and Michelle in particular, when he knew or should have known that he would pursue inappropriate sexual conduct towards them;

i.      in utilizing his position as counselor and his superior position of authority granted to him by Defendant Berkshire School to groom, seduce and exploit Michelle;

j.      in otherwise failing to act as a prudent person would have acted under the same or similar circumstances; and,

k.      in placing a gun against Michelle's head under circumstances calculated or reasonably calculated to influence Michelle and cause apprehension or fear.

46.     Based on Defendants' acts and omissions as described herein, among other acts and omissions, Defendants breached their duty of care and as a direct and proximate cause of their breaches, Michelle left Defendant Berkshire School emotionally broken and suicidal.

47.     Plaintiffs have suffered and continue to suffer severe mental anguish, severe emotional distress, permanent harm, as well as significant financial and other consequential damages.

48.     By virtue of the foregoing, Defendants are jointly and severally liable to the Plaintiffs in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Plaintiffs are entitled.

## COUNT II: NEGLIGENT HIRING, TRAINING, RETENTION, INVESTIGATION, & SUPERVISION
### (As to Defendant Berkshire School)

49.     Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 48 with the same force and effect as if fully set forth verbatim herein.

50.    Defendant Berkshire School owes to its students and parents a duty of due care in the hiring, training, retention, investigation and supervision of its employees, agents, and/or volunteers.

51.    In order to protect its students from foreseeable risks of harm, Defendant Berkshire School had a duty to demonstrate the following (without limitation) in deciding to hire Defendant Bagnardi:

        a.      exercise reasonable care in hiring Defendant Bagnardi;

        b.      fully investigating all areas of Defendant Bagnardi's professional and/or personal background;

        c.      discovering the circumstances under which he left prior employment;

        d.      obtain information reasonably available to them; and,

        e.      other such things that may be proven at trial.

52.    Defendant Berkshire School breached duties by hiring Bagnardi as, *inter alia,* counselor and the Assistant Dean of Students without a reasonable investigation into his background, experience and/or qualifications.

53.    Defendant Berkshire School owes to its students and parents a duty of due care in the training, supervision and retention of its employees.

54.    In order to protect its students from foreseeable risks of harm, Defendant Berkshire School in its training, retention and supervision of employees had a duty to (but not limited to):

        a.      properly train employees so they could detect and respond to inappropriate relationships occurring on campus;

        b.      discover and be aware of the inappropriate, exploitive and abusive nature of Defendant Bagnardi's conduct towards Michelle;

c.    ensure that all employees, including Defendant Bagnardi, were in compliance with all of Defendant Berkshire School's rules, regulations, polices, etc. at all times;

d.    ensure that no employee, including Defendant Bagnardi, used his authorized position of power in a manner that was not in the best interest of the students, and in particular Michelle; and

e.    ensure the foregoing because Defendant Bagnardi was placed in a position of authority by Defendant Berkshire.

55.    As a direct and proximate cause of Defendant Berkshire School's negligent training, retention and supervision of employees, including Defendant Bagnardi, Defendant Bagnardi sexually exploited and abused Michelle.

56.    Defendant Berkshire School breached a duty to train employees, and to supervise and investigate employees and students.

57.    Notwithstanding the numerous warning signs that Defendant Bagnardi's conduct towards Michelle was inappropriate in nature, Defendant Berkshire School failed to perform an investigation into such acts that a reasonably prudent person would do under the circumstances and/or in such an environment.

58.    As a direct and proximate cause of Defendant Berkshire School's negligence, notwithstanding all warning signs, Defendant Bagnardi, under the supervision of Defendant Berkshire School:

a.    took advantage of the lax supervision at Defendant Berkshire School;

b.    abused the trust and confidence placed in him by Plaintiffs, as a result of his position of authority with Defendant Berkshire School;

c.    abused the various representations made by Defendant Berkshire School about his qualifications;

d.    used resources of Defendant Berkshire School to "groom" and exploit Michelle; and,

16

    e.  sexually exploited and abused Michelle.

59. As a result of Defendant Berkshire Schools acts and omissions, Plaintiffs have suffered damages in the following manners (among others):

    a.  Michelle was emotionally traumatized and she had to withdraw from Defendant Berkshire School without graduating;

    b.  Michelle became suicidal;

    c.  Michelle was hospitalized;

    d.  all Plaintiffs have suffered and continue to suffer severe mental anguish and severe emotional distress and permanent harm; and,

    e.  consequential damages and other damages that may be proven at trial.

60. By virtue of the foregoing, Defendant Berkshire School is liable to the Plaintiffs in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Plaintiffs are entitled.

## COUNT III: FRAUD AND MISREPRESENTATION
### (As to Defendant Berkshire School)

61. Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 60 with the same force and effect as if fully set forth verbatim herein.

62. Defendant Berkshire School misrepresented, *inter alia*, the following material facts:

    a.  strict compliance with dorm rules, including without limitation, locked doors, lights out, bed checks, no persons of the opposite sex in a dorm room, and no closed dorm room doors during permitted visits;

    b.  that it and all its staff and faculty members were properly trained and committed to the school's mission, that each could and should be trusted as mentors and surrogate parents, and that each would act only in the best interests of its students and community members.

17

c. that their prior headmaster resigned for reasons other than alleged inappropriate sexual conduct;

d. that student advisors were key people in each student's support network who act as advocates, surrogate parents and friends and who are charged with developing a supportive relationship with each advisee and maintaining frequent contact with parents;

e. strict compliance with its Honor Code and school policies providing to every student a safe, healthy, orderly and civil school environment;

f. that all its faculty and staff, expressly including Defendant Bagnardi, are mentors fully trained and committed to serving the best interests of its students and meeting the mission of the school;

g. the prior history of inappropriate sexual conduct of employees and/or agents of Defendant Berkshire School;

h. by falsely informing Plaintiffs (e.g., Donald and Marie) that it would stand *in loco parentis* for them, and that it would actually enforce its rules and polices to insure Michelle's safety.

63. Defendant Berkshire School made each representation of material fact with knowledge of its falsity or with recklessness as to its truth or falsehood.

64. Defendant Berkshire School's misrepresentations and omissions, among others, were made with the intent to induce Plaintiffs to act upon them.

65. Berkshire did not properly train employees or strictly enforce its rules and policies and took no steps to ensure that its faculty and staff strictly enforced compliance.

66. This false information was put forth by Berkshire School to guide parents in choosing it as a school placement for their children. Specifically, Plaintiffs relied on Berkshire School's misrepresentations to their detriment.

67. Plaintiffs justifiably relied and acted upon Berkshire's misrepresentations when accepting Defendant Berkshire School's offer of admission, entering into a contractual

relationship with Defendant Berkshire and delivering their minor child into the care and custody of Berkshire School and Bagnardi.

68.     As a direct and proximate result of Defendant Berkshire School's misrepresentations and fraud, Plaintiffs have suffered damage, including without limitation, severe mental anguish, emotional distress and financial damages.

69.     Based on the foregoing, Defendant Berkshire School is liable to the Plaintiffs in an amount to be determined, plus punitive damages, interest, costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief deemed just and proper.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

70.     Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 69 with the same force and effect as if fully set forth verbatim herein.

71.     Defendants intended to inflict emotional distress or knew (or should have known) that emotional distress would result to Michelle.

72.     Defendants' conduct was extreme and outrageous, beyond all bounds of decency and is utterly intolerable in a civilized community.

73.     Defendants' conduct has caused all Plaintiffs to suffer (and continue to suffer) severe mental anguish, emotional distress, and permanent harm.

74.     By virtue of the foregoing, Defendants are jointly and severally liable to the Plaintiffs in an amount to be determined, plus punitive damages, interest and costs, including reasonable attorneys' fees to the fullest extent permissible and such other and further relief to which Plaintiffs are entitled.

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (As to All Defendants)

75.     Plaintiffs repeat and reallege each and every factual allegation set forth in paragraphs 1 through 74 with the same force and effect as if fully set forth verbatim herein.

76.     At all times relevant, Defendant Bagnardi and Defendant Berkshire School and its agents/employees owed a duty to Plaintiffs and were negligent in their dealings with Plaintiffs, including (but not limited to):

a.      Defendant Berkshire School's authorized agents and employees ignoring the signs (objective and subjective) of Defendant Bagnardi's inappropriate conduct towards Michelle which was exploitive, abusive and against her best interests;

b.      in failing to provide Michelle an environment free from sexual exploitation and abuse and from invasion of Michelle's privacy by their negligent failure to enforce strict compliance with rules in place to protect student safety and their negligent failure to investigate the conduct of Bagnardi toward Michelle;

c.      turning a "blind eye" to, *inter alia*, late nights, dorm visits behind closed doors, unlocked access doors to dormitories, trips off campus, slipping grades, and the virtual exclusion of Michelle from student life and her peers by Defendant Bagnardi's control over Michelle;

d.      in failing to act in Michelle's best interests, and to protect her from, *inter alia*, emotional and sexual abuse, particularly from its own faculty and staff and being acutely aware of incidents of sexual exploitation, abuse and harassment by faculty of students, their conduct toward Michelle was extreme and outrageous.

77.     Defendants knew, or should have known, that emotional distress was the likely result of failing to provide Michelle an environment free from sexual and physical exploitation and abuse, and invasion of Michelle's privacy.

78.     All objectively reasonable persons under the circumstances endured by Michelle and Plaintiffs described herein would suffer emotional distress.